ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

KEITH A. SCHLACHTER, and all who )
are currently detained within one of two )
Richmond County Jails, )
)
Plaintiff, )
)
v. ) CV 109-095
)
RONALD STRENGTH, Sheriff, et al., )
)
Defendants. )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, formerly incarcerated at the Charles B. Webster Detention Center ("the Jail") in Augusta, Georgia, commenced the above-captioned case pursuant to 42 U.S.C. § 1983. As discussed below, Plaintiff has filed a second amended complaint, and because Plaintiff is proceeding *in forma pauperis*, this complaint must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(i) & (ii).

Before the Court could screen Plaintiff's original complaint, Plaintiff submitted a motion to amend (doc. no. 13), and the Court directed Plaintiff to submit an amended

complaint, to include all of his allegations in one document, within fifteen (15) days of the Court's November 4, 2009 Order. (Doc. no. 14, p. 3). Plaintiff timely submitted an amended complaint, and on December 14, 2009, the Court reviewed the amended complaint in conformity with the *in forma pauperis* statute. Because of pleading deficiencies, Plaintiff was directed to file a second amended complaint. (Doc. no. 16). Plaintiff has submitted his second amended complaint, (doc. no. 17), and it is this document that the Court will now screen.

## I. SCREENING THE SECOND AMENDED COMPLAINT

Liberally construing Plaintiff's second amended complaint, the Court finds that Plaintiff names Ronald Strength, Sheriff of Richmond County, as the sole Defendant in this action. (Doc. no. 17, pp. 1, 4). Plaintiff makes a myriad of allegations in his second amended complaint, and thus the Court has grouped Plaintiff's allegations according to the type of claims he is attempting to assert, rather than presenting them chronologically.

Beginning with the allegations regarding alleged interference with his mail, according to Plaintiff, Jail policies "enforced by employees within both Richmond County Jails [and] implemented by [D]efendant(s)" prohibited him from receiving "personal mail that they decide is to[o] large, greeting cards, or anything photocopied or printed off the internet." (Id. at 5). Plaintiff goes on to complain that Jail policies also prohibited him from receiving "books, magazines, fliers, and religious material through routine mail," and that "Defendant(s)" did not provide him with an alternative for receiving such mail. (Id. at 5-6). More specifically, Plaintiff states that "sometime between the months of May [to] July 2009," the Jail rejected religious material sent to him from a radio station. (Id. at 6-7).

2

Plaintiff further contends that "employees of both Richmond County Jails" did not provide him with a notice of rejection when this mail was rejected, nor did they provide him with a notice of rejection when his mail was rejected on another occasion, which Plaintiff specifically identifies as occurring in June 2009. (Id. at 7). Plaintiff is also dissatisfied that the Jail does not provide a log to document that "legal mail" has been sent or received. (Id. at 9). Later in his second amended complaint, Plaintiff alleges that his First Amendment rights were also violated in October 2009, following his release from the Jail, when "mailroom staff employed by [D]efendant(s)" rejected mail he sent to an individual who was still being detained in the Richmond County Jail. (Id. at 12).

As to Plaintiff's contentions regarding the exercise of his religion, Plaintiff maintains that "employees of both [J]ails [allegedly] enforce a rule implemented by [D]efendant(s)" that prohibited him and others from possessing their Bibles. (Id. at 6). Plaintiff alleges that these employees told him and others that such matters are a "privilege and not a right." (Id.).

Plaintiff also contends that his right to access the courts was violated in various respects. First, Plaintiff alleges that employees of "both Richmond County Jails" who were "acting under the authority of [D]efendant(s)" did not provide him with a telephone book or assist him in obtaining "any addresses or telephone numbers of public or private individuals . . . ." (Id. at 8). Plaintiff alleges that such behavior interfered with his "constitutional right[] to petition the courts," inasmuch as he maintains that he tried for several months to obtain this Court's address but never received a reply from Jail employees. (Id. at 8-9). Plaintiff also argues that his right to access the courts was violated by "Defendant(s)" in implementing and enforcing a rule that prohibited his access to the law library, which he argues was

3

"inadequately stocked." (Id. at 9). According to Plaintiff, "[J]ail employees" also denied him access to the courts by failing to respond to his written request for documentation verifying the funds in his prison trust account. (Id. at 11).

Plaintiff is also dissatisfied with the grievance system at the Jail. According to Plaintiff, "[J]ail employees acting under the authority of [D]efendant(s)" refused to respond to grievances he filed, and there are allegedly no "logs for grievances" for inmates to verify that these documents were sent and received. (Id. at 9, 11). Specifically, Plaintiff alleges that "[J]ail employees," who Plaintiff identifies as either Captain Huffman or Reeves, failed to respond to grievances that Plaintiff filed on June 1, 2009, June 15, 2009, July 2, 2009, August 5, 2009, August 8, 2009, August 31, 2009, and September 15, 2009. (Id. at 11).[1]

Finally, Plaintiff makes allegations of retaliation. Specifically, Plaintiff states that Lieutenant Elim, whom Plaintiff describes as "an employee of [D]efendant(s)," retaliated against him. (Id. at 10). Specifically, Plaintiff alleges Lt. Elim removed him from his "trustee status" for "exercising his rights to petition the courts and to freedom of speech." Plaintiff requests various types of injunctive relief, as well as $30,000 in punitive damages. (Id. at 13-15).

## II. DISCUSSION

### A. Defendants Not Named in Second Amended Complaint

In the Court's Order directing Plaintiff to amend his complaint, he was warned that his second amended complaint would supersede his previously filed complaints. (Doc. no.

---

[1] Plaintiff alleges that the failure to respond to these grievances also denied him access to the courts, inasmuch as it prevented him from exhausting his administrative remedies. (See doc. no. 17, p. 11).

4

16, p. 4 (citing Malowney v. Fed. Collection Deposit Group, 193 F.3d 1342, 1345 n.1 (11th Cir. 1999); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994))). Plaintiff was also specifically told that he must name all Defendants in the caption and the body of the second amended complaint. (Id.). Upon review of the second amended complaint, the Court finds that Plaintiff no longer names the Richmond County Jail Tower, the Richmond County Jail, the Charles B. Webster Detention Center, or Major William E. Johnson as parties to this lawsuit. Although Plaintiff makes multiple references to "Defendant(s)" throughout the statement of his claims, he does not name these Defendants in the caption or describe in the body of the second amended complaint any actions taken by these Defendants. Accordingly, these Defendants should be dismissed from this lawsuit.

### B. Claims for Injunctive Relief

Plaintiff has requested various forms of injunctive relief based on the alleged conduct described above. However, Plaintiff's claims for injunctive relief fail because Plaintiff has been released from incarceration.[2] (See doc. no. 10). Indeed, § 1983 claims seeking injunctive relief are rendered moot when a prisoner is released from the facility where the alleged unconstitutional conduct occurred. See Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988) (*per curiam*); McKinnon v. Talladega County, Ala., 745 F.2d 1360, 1363 (11th Cir. 1984). Thus, any claims for which Plaintiff is seeking injunctive relief are moot and should be dismissed because Plaintiff is no longer incarcerated at the facility where the alleged unconstitutional conduct occurred.

---

[2]Notably, Plaintiff does not request any injunctive relief with respect to the letter that he alleges was returned to him by the Jail after his release from incarceration.

5

## C. Claims Asserted on Behalf of Other Prisoners

Based on Plaintiff's references to "plaintiff(s)" throughout the statement of his claims, the Court gleans that Plaintiff is attempting to assert various claims on behalf of other inmates. However, these claims fail because Plaintiff does not have standing to raise claims regarding the violation of others' rights. Bennett v. Hendrix, 423 F.3d 1247, 1253 (11th Cir. 2005) ("For Article III standing purposes, then, the plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct." (internal quotation omitted)). Accordingly, to the extent Plaintiff is attempting to assert claims on behalf of other inmates, these claims should be dismissed as well.[3]

## D. Access to the Courts Claims

Plaintiff's claims that he was denied access to the courts should also be dismissed. Plaintiff asserts in his second amended complaint that he was prohibited from accessing the law library and that the law library was "inadequately stocked," thereby limiting his access to the courts. (Doc. no. 17, p. 9). Plaintiff also alleges that he was denied access to a telephone book, which he contends also denied him access to the courts because it hindered his ability to obtain this Court's address. (Id. at 8). Plaintiff further argues that Jail employees' refusal to respond to his grievances denied him access to the courts because such actions prevented him from exhausting his administrative remedies. (Id. at 11). As noted above, Plaintiff has also allegedly been denied access to the courts because Jail employees

---

[3]The docket in this case currently lists Plaintiff "and all who are currently detained within one of two Richmond County Jails" as parties to this case. As Plaintiff may not assert claims on behalf of other inmates, the **CLERK** is **DIRECTED** to change the docket to reflect that there are no class claims pending in this civil action.

6

failed to respond to his written request for documentation verifying the funds in his prison trust account. (Id.).

To state a viable denial of access to the courts claim, Plaintiff must plead and prove actual injury to existing or contemplated litigation or nonfrivolous (and therefore viable) claims challenging his sentence or conditions of confinement. Lewis v. Casey, 518 U.S. 343, 349-55 (1996); see also Wilson v. Blankenship, 163 F.3d 1284, 1291 (11th Cir. 1998) (emphasizing that an inmate's right to access the courts is only implicated where there is actual injury suffered "in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement."). The Eleventh Circuit has clarified the requirements for pursuing a denial of access to the courts claim as follows:

> [A] plaintiff first must show actual injury before seeking relief . . . . This essential standing requirement means that [a defendant's] actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action. To prevail, a plaintiff must provide evidence of [] deterrence, such as denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of [a defendant].

Blankenship, 163 F.3d at 1290-91(citations omitted). Stated otherwise, there must be an allegation that the actions of a defendant acting under the color of state law "hindered . . . 'efforts to proceed with a legal claim in a criminal appeal, post conviction matter, or civil rights action seeking to vindicate basic constitutional rights.'" Id. at 1291 (quoting Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (*per curiam*)).

As noted above, Plaintiff states that he was denied access to the courts because (1) he had only limited access to an inadequately stocked law library, (2) he was denied access

7

to a telephone book, (3) Jail officials refused to respond to his grievances, and (4) Jail officials did not provide him a copy of his prison trust account upon request. However, Plaintiff has not alleged that any of these actions have resulted in the denial or dismissal of any appeal, habeas petition, or any civil rights case. Thus, Plaintiff has failed to demonstrate that he suffered any actual injury as a result of these alleged actions, and these claims fail as a matter of law.

E. **Grievance Claims**

Plaintiff's claims regarding the lack of a "grievance log" and Jail officials' alleged refusal to respond to various grievances also fail.[4] "Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation." Rienholtz v. Campbell, 64 F. Supp.2d 721, 731 (W.D. Tenn. 1999), *aff'd*, 198 F.3d 247 (6th Cir. 1999) (Table); see also Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner. . . . A state-created prison grievance procedure is simply a procedural right and does not confer any substantive right upon an inmate."); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); Ouzts v. Cummins, 825 F.2d 1276, 1278 (8th Cir. 1987) (failure to respond to grievance does not constitute a due

---

[4]The Court is of course aware that Plaintiff has alleged that the refusal to respond to his grievances affected his access to the courts, as discussed in the preceding section. However, to the extent Plaintiff is complaining about the alleged refusals to respond to the grievances in and of themselves, the Court treats these allegations as an attempt to state a separate and distinct claim regarding the Jail's grievance system.

8

process violation); Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982) (failure to process plaintiff's grievances is not actionable under § 1983).

The Eleventh Circuit's decision in Wildberger v. Bracknell, 869 F.2d 1467 (11th Cir. 1989) (*per curiam*) is instructive on this point. In that case, the plaintiff alleged numerous claims, including a violation of "the grievance procedures established by the State Department of Corrections." Id. at 1467. Addressing the plaintiff's claims, the magistrate judge determined that the "violation of the grievance procedure did not rise to the level of a constitutional violation, since there was no entitlement to a grievance procedure under the Federal Constitution." Id. In the end, the magistrate judge determined that none of the plaintiff's claims had merit. Id. at 1468. Although the Eleventh Circuit found error with the trial court's analysis of one of the plaintiff's retaliation claims, it found no error with the trial court's adoption of the magistrate judge's recommendation regarding the plaintiff's grievance claim. Id.

In this case, Plaintiff states that certain Jail officials refused to respond to various grievances he filed and that there is no "grievance log." However, alleged misdeeds regarding grievance procedures do not give rise to stand-alone claims under § 1983. Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (*per curiam*). "There is no right to a particular type of process in the handling of prison grievances. . . . [F]ederal courts simply do not sit as the ultimate appellate tribunal for prison grievance procedures." Rienholtz, 64 F. Supp.2d at 731. Therefore, Plaintiff's claims regarding alleged violations of the grievance procedures fail as a matter of law.

F.  ***Respondeat Superior*** **Claims**

The Court is aware that Plaintiff has alleged that Jail employees were acting pursuant to Jail policies or under the authority of "Defendant(s)" with respect to those actions regarding the grievance system and those actions that Plaintiff alleges deprived him of access to the courts. As Defendant Strength is the only named Defendant in this action, it appears that Plaintiff is attempting to blame Defendant Strength for these actions because of the supervisory nature of his position. However, as the Court has determined that these actions do not violate any of Plaintiff's constitutional rights, Plaintiff cannot maintain a § 1983 action for supervisory liability against Defendant Strength with respect to these claims. Hicks v. Moore, 422 F.3d 1246, 1253 (11th Cir. 2005) (reversing of district court's denial of summary judgment, because the Eleventh Circuit concluded that the plaintiff's constitutional rights were not violated, thus, the plaintiff could not maintain a § 1983 action for supervisory liability against the defendant).

To the extent Plaintiff seeks to hold Defendant Strength liable for Lieutenant Elim's alleged retaliatory actions, this claim also fails.[5] "Supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal

---

[5]The Court notes that Lieutenant Elim is not a named Defendant in this action. Indeed, despite multiple instructions from the Court (see doc. no. 14, p. 4; doc no. 16, pp. 4-5), Plaintiff does not name Lieutenant Elim in the caption of the second amended complaint or on page 4 of the document, where Plaintiff is specifically directed to list all the parties he wishes to include as Defendants in this case. (See doc. no. 17, pp. 1, 4). Rather, based on Plaintiff's description of Lieutenant Elim as an employee of Defendant Strength (see id. at 10) and the failure to name Lieutenant Elim as a Defendant in the second amended complaint, the Court concludes that Plaintiff is attempting to hold Defendant Strength liable for Lieutenant Elim's actions under a theory of *respondeat superior*.

10

quotation marks and citation omitted); see also Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 & 694 n.58 (1978). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor-employer actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor/employer and the alleged constitutional violation. Hartley, 193 F.3d at 1269 (citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). However, Plaintiff has not alleged that Defendant Strength actually participated in the events forming the basis of Plaintiff's retaliation claim.

Similarly, Plaintiff fails to allege a "causal connection" between Defendant Strength and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history of widespread abuse[6] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from

---

[6]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

11

doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Notably, Plaintiff has not alleged that Lieutenant Elim was acting pursuant to any custom or policy of Defendant Strength, nor has Plaintiff otherwise shown a causal connection between Lieutenant Elim's actions and Defendant Strength. Accordingly, Plaintiff has not made the necessary showing with respect to Defendant Strength, and therefore, Plaintiff's claim against him in this regard must fail as well.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants the Richmond County Jail Tower, the Richmond County Jail, the Charles B. Webster Detention Center, and Major William E. Johnson, as well as Plaintiff's retaliation claim, be dismissed from this action. The Court further **REPORTS** and **RECOMMENDS** that Plaintiff's injunctive relief, access to the courts, and grievance claims, as well as any claims asserted on behalf of other individuals, be **DISMISSED** for failure to state a claim upon which relief may be granted.[7]

SO REPORTED and RECOMMENDED this 8th day of February, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[7] In a simultaneously filed Order, the Court has directed that service of process be effected on Defendant Strength as to Plaintiff's First Amendment claims regarding interference with his mail and free exercise of his religion.

12